# United States District Court

WESTERN DISTRICT OF NEW YORK

In the Matter of

IN THE MATTER OF THE
APPLICATION OF THE UNITED
STATES OF AMERICA FOR A
WARRANT AUTHORIZING THE
INSTALLATION AND USE OF A TRACKING
DEVICE ON A GRAY 2016 GMC YUKON
BEARING NEW YORK REGISTRATION
HAT9333 WITH VIN 1GKS2BKC7GR154351

15-MJ- 4186

### APPLICATION FOR A WARRANT AUTHORIZING
### THE INSTALLATION AND MONITORING OF A GPS TRACKING DEVICE

I, <u>CHRISTOPHER MAHAFFY</u>, being duly sworn depose and say:

I am a Special Agent with U.S. Drug Enforcement Administration (DEA), and have reason to believe that probable cause exists for the installation and monitoring of a tracking device on

GRAY 2016 GMC YUKON, BEARING NEW YORK REGISTRATION HAT9333 WITH VIN 1GKS2BKC7GR154351

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. §§ 841 and 846.

The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof:    (✓) Yes    ( ) No

_____
CHRISTOPHER MAHAFFY
Signature of Affiant

Sworn to before me and subscribed in my presence,

December 3, 2015   at  10:20 am            at   Rochester, New York
Date                                                              City and State

Hon. Marian W. Payson, U.S. Magistrate Judge          _____
Name & Title of Judicial Officer                                    Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE                         :
APPLICATION OF THE UNITED                    :
STATES OF AMERICA FOR A                      :
WARRANT AUTHORIZING THE                      :          15-MJ- 4186
INSTALLATION AND USE OF TRACKING             :
DEVICE ON A GRAY 2016 GMC YUKON              :
BEARING NEW YORK REGISTRATION                :
HAT9333 WITH VIN 1GKS2BKC7GR154351           :

### AFFIDAVIT IN SUPPORT OF MOTION FOR GPS TRACKING DEVICE

Your affiant, Christopher Mahaffy, having been duly sworn, states the following:

1.  I am a Special Agent with the Drug Enforcement Administration (DEA), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801, et seq. And Title 18, United States Code, Section 2516(1).

2.  I have been employed with the Drug Enforcement Administration (DEA) since May 4, 2014. I am currently assigned to the DEA Rochester Resident Office. Prior to being a Special Agent with the Drug Enforcement Administration, I received a Bachelor's of Arts in Public Justice from the State University of New York at Oswego in May 2007. I completed 18 weeks of training at the DEA Office of Training, located in Quantico, Virginia prior to being

1

assigned to the Rochester Resident Office. My training included classroom preparation in drug trafficking networks, drug identification, as well as practical application of surveillance, drug investigation, and arrest procedure. I am familiar with the methods of use, effects, distribution, appearance, as well as the methods of manufacture of controlled substances. I have experience in the investigation of violations of federal and state narcotics laws. During my time at the Rochester Resident Office, I have participated in investigations involving drug trafficking and organized crime matters, including two long-term narcotics investigations that utilized the court-authorized interception of wire communications that have resulted in the arrest of drug distributors, and the seizures of quantities of controlled substances. In addition, I have had the opportunity to work with other DEA agents and law enforcement officers, who have also investigated drug trafficking networks.

3.      I am presently investigating the activities of Blake RIVERA and others for possible violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute, and distribution, of a controlled substance) and 846 (conspiracy to possess with intent to distribute, and to distribute, a controlled substance). I submit this affidavit in support of an application for a warrant authorizing the installation and use of a mobile tracking device on the automobile currently being used by Blake RIVERA, that is, a gray 2016 GMC Yukon, bearing New York registration HAT9333 and VIN 1GKS2BKC7GR154351, registered to EAN Holdings LLC, 14002 East 21st Street, Tulsa, Oklahoma 74134 and rented in the name of and utilized by Blake RIVERA (hereinafter SUBJECT VEHICLE). The investigation has revealed

that Blake RIVERA uses rental cars and exchanges them for new rental cars roughly every month.

4. Probable cause exists to believe, and I do believe, as more fully set forth herein, that the installation and use of a mobile tracking device in or on the SUBJECT VEHICLE will lead to evidence of the above referenced crimes as well as the identification of individuals who are engaged in the commission of those and related crimes. The purpose of this affidavit is solely to establish probable cause for the installation, tracking, and monitoring of a mobile tracking device and therefore not all aspects of this investigation are contained herein. I have participated in the investigation that is the subject of this affidavit in conjunction with other law enforcement officers. As a result of this participation, as well as information provided by other law enforcement officers, I am fully familiar with the facts set forth herein.

## INVESTIGATION BACKGROUND

5. On July 29, 2015, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days on a 2015 Dodge Challenger, bearing Virginia registration VHB2879 and VIN 2C3CDZAG9FH850140, rented in the name of and utilized by Blake RIVERA.

6. On August 26, 2015, the Honorable Marian W. Payson, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a

3

period of 45 days on a 2015 GMC Yukon, bearing Maryland registration 5BR1811 and VIN 1GKS2HKC2FR265780, rented in the name of and utilized by Blake RIVERA.

7.   On October 1, 2015, the Honorable Marian W. Payson, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days on a 2015 GMC Acadia, bearing New York registration GZR1144 and VIN 1GKKVRKD1GJ113205, rented in the name of and utilized by Blake RIVERA.

8.   On November 13, 2015, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a warrant extending the use of a GPS tracking device for a period of 45 days on the 2015 GMC Acadia, being New York registration GZR1144 and VIN 1GKKVRKD1GJ113205, rented in the name of and utilized by Blake RIVERA.

9.   The investigative team began monitoring the GPS tracking device on the 2015 GMC Acadia (hereinafter the Acadia) on or about October 2, 2015. During the monitoring period, on October 7, 2015 at approximately 6:31 p.m., the GPS tracking device assisted agents in determining that the Acadia traveled to Uncle Bob's Self Storage, 2585 Brighton Henrietta Town Line Road, Rochester, New York 14623, hereafter Uncle Bob's. Video footage from Uncle Bob's showed the Acadia pulling up a few feet from Storage Unit #503 after making entrance to the facility through the security gate. A single adult male exited the driver's side of the Acadia wearing a dark jacket. The adult male went around the back of the Acadia and opened Storage Unit #503 before entering the unit. The male was in the unit approximately three minutes and fifteen seconds

before he returned to the passenger side of the Acadia briefly. The male then closed the storage unit and returned to the driver's side of the Acadia, departing shortly afterward. The Acadia was in the vicinity of Storage Unit # 503 for less than five minutes. It should be noted that the operator of the Acadia left the vehicle and lights on when he arrived at the storage unit and the lights partially obscured the view from the security camera. Information received has shown that Storage Unit #503 was rented by Grissel Rivera, Blake RIVERA's wife, on November 27, 2012. The unit currently has a monthly fee of $180.00. Information compiled between data from the GPS tracking device, entry logs of Uncle Bob's, and the security cameras at Uncle Bob's has shown that the Acadia has returned to Storage Unit eight additional times: on October 12, 2015, at approximately 11:31 p.m.; on October 15, 2015, at approximately 9:19 p.m.; on October 24, 2015, at approximately 7:06 p.m.; on October 27, 2015, at approximately 8:45 p.m.; on October 31, 2015, at approximately 9:23 p.m.; on November 1, 2015, at approximately 8:52 p.m.; on November 7, 2015, at approximately 8:36 p.m.; and on November 22, 2015, at approximately 9:22 p.m. All of these visits to the Storage Unit are consistent with in time and duration of the visit described above on October 7, 2015. It should also be noted that Uncle Bob's entry logs showed that RIVERA's password was entered into the system on September 27, 2015, at approximately 7:08 p.m., shortly after RIVERA had dropped off a previously rented GMC Yukon at Enterprise and picked up the Acadia. Based on my training and experience, the use of a storage unit is behavior commonly associated with drug dealers distributing large amounts of narcotics as drug dealers often keep narcotics, currency and/or contraband in storage units in order to keep the items safe from other drug

dealers and to avoid detection from law enforcement. Additionally, RIVERA has not been observed transporting large household items or storage boxes to the storage unit. The discovery of the storage unit via the use of a GPS tracking device further assists law enforcement in determining RIVERA's drug trafficking methods and patterns, as it has identified another location in which narcotics and/or related currency is being kept.

10. On October 14, 2015, at approximately 1:45 a.m., the GPS tracking device assisted agents in identifying an unknown female (hereinafter the UF) being picked up by RIVERA at the bus station in Rochester, New York. Video footage from the bus station showed the UF exiting a bus that recently arrived at the bus station with a couple of bags. The UF then walked towards the back of the bus in the direction of a parking lot to the south of the bus station and out of view of the security cameras. After speaking with a manager at the bus station, your Affiant learned that the bus in question was Bus # 86112, completing Trip# 270. The originating city was New York City while Rochester, New York was the first stop on its route, arriving at approximately 1:31 a.m. on October 14, 2015. At approximately 1:45 p.m., the Acadia pulled into the bus station lot from North Clinton Avenue and traveled through the lot before departing onto Joseph Avenue. The Acadia then traveled to 164 Curtis Street, Rochester, New York, the location where RIVERA operates his drug trafficking organization. It should be noted that there is a section of the lot in the direction of where the UF walked towards that is out of view from the security cameras at the bus station. This section encompasses approximately 50 feet of the driveway in which the Acadia traveled. It took the Acadia approximately twenty seconds to travel this distance and come into view on an additional

security camera, indicating that the Acadia likely picked up the UF while traveling through the parking lot. It should be noted that this behavior is reminiscent of behavior detailed in the October 1st affidavit and is indicative of drug dealers using drug couriers to transport narcotics and/or currency. The discovery of the UF is important to the investigation of RIVERA as it shows that he is likely getting supplied by multiple regions of the country. Prior CS information has detailed that RIVERA distributes both cocaine and heroin in the Rochester, New York area. Through the use of a GPS tracking device, law enforcement has now identified two potential source cities, Cleveland, Ohio, and New York City, New York.

11. As has been previously detailed in the previous affidavits, RIVERA often operates during the late night early morning hours and there is little vehicular traffic for law enforcement to blend with at these times. Without the use of a GPS tracking device agents would most likely be spotted by RIVERA or his associates and compromise the investigation. As agents learn RIVERA's methods of operation for his drug trafficking operation it is crucial to this investigation for agents to continue to utilize the GPS tracking device to further gain information on when and how he is being supplied cocaine, as to identify additional co-conspirators and stash locations that RIVERA utilizes to operate his drug trafficking organization.

12. On November 30, 2015, the investigative team observed the Acadia parked amongst the fleet of rental vehicles at the Greater Rochester International Airport indicating that RIVERA was no longer operating the Acadia. On December 1, 2015, Rochester Police

7

Department Investigator Timothy Pearce observed the SUBJECT VEHICLE parked in the driveway of RIVERA's residence located at 276 Woodsmoke Lane, Rochester, New York. A New York State Department of Motor Vehicles check showed that the SUBJECT VEHICLE is registered to EAN Holdings LLC, 14002 East 21st Street, Tulsa, Oklahoma 74134. This is the same company to which the previously referenced 2015 Dodge Challenger, 2015 GMC Yukon, and 2016 GMC Acadia were registered, albeit at a different address. Information received from an employee of Enterprise Rental Company revealed that the SUBJECT VEHICLE was rented by Blake RIVERA.[1]

## USE OF GPS TRACKING DEVICE

13.     The goal of this investigation is not limited to arresting Blake RIVERA and charging him with the sales of cocaine to the two Confidential Sources. The goals also include identifying the locations where RIVERA stashes his drugs and money and identifying RIVERA's sources, workers and customers. While monitoring of the GPS tracking device on the 2015 GMC Acadia between October 2, 2015, and November 30, 2015, has given agents information on where RIVERA may be receiving his cocaine shipments and where he may be storing his narcotics and/or currency, it did not produce any evidence relating to the identities or exact locations of his suppliers. It is anticipated that, in the event the investigative team can monitor the requested GPS tracking device on the SUBJECT VEHICLE for an additional 45

---

[1] After it was determined that RIVERA returned the 2016 GMC Acadia to Enterprise, the investigative team removed the GPS tracking device from that vehicle.

8

day period, it will lead to evidence identifying his supplier(s) and the location(s) where his supplier(s) operates. It also should be noted that previous trackers were not monitored the full 45 day period. The first two trackers, described above, were monitored for 24 days and 28 days, respectively because RIVERA returned the rental vehicles and monitoring stopped at that time. The November 13th application extended the use of a GPS tracking device on the previously described 2015 GMC Acadia was monitored for only 18 days before Rivera returned the rental vehicle. Based on my experience in this case and my training, I believe that it will be extremely difficult to establish and maintain surveillance on RIVERA as he travels in and around Rochester and outlying areas, without the installation of a GPS tracking device on the SUBJECT VEHICLE. Without the installation of a GPS device, surveillance of RIVERA would require investigators to physically follow him as he drives around the city and out of the city. This increases the likelihood that RIVERA and/or his associates will detect the police surveillance, thereby damaging the investigation by RIVERA and his associates switching vehicles, changing addresses and phone numbers, concealing or moving to new locations their drugs and drug proceeds and even leaving the area for a period of time.

14. Therefore, your affiant requests authorization to install and monitor a GPS mobile tracking device on the SUBJECT VEHICLE. Use of a mobile tracking device will allow the investigating agents to monitor the locations to which the SUBJECT VEHICLE is driven without having to remain in close sight surveillance, which will greatly reduce the risk that the investigation would be compromised. As noted above, your affiant believes that monitoring the

mobile tracking device will lead to evidence of the aforementioned offenses, as well as to the identification of other individuals who are engaged in the commission of these offenses and related crimes.

15. Your affiant requests authorization to install a GPS mobile tracking device on the SUBJECT VEHICLE while it is in the Western District of New York. Because Blake RIVERA usually parks the SUBJECT VEHICLE in his driveway at his residence, it may be necessary to enter onto private property in order to effect the installation and removal of the mobile tracking device on the SUBJECT VEHICLE. To ensure the safety of the executing officers and to avoid premature disclosure of this ongoing and covert investigation, it is requested that the Court authorize installation and removal of the tracking device at any time in the day or night. I believe that if RIVERA were to learn of the tracking device or efforts by the investigative team to install the device, it would alert him and any co-conspirators to the existence of this ongoing, covert investigation. I further believe that if RIVERA was alerted to the existence of this investigation, he and/or any co-conspirators may become more secretive in their criminal activities, conduct their criminal activities at different locations, harm suspected government agents and/or informants, threaten potential witnesses, flee the jurisdiction, conceal or destroy evidence, and otherwise seriously jeopardize this ongoing criminal investigation.

16. In the event that the Court grants this application, investigators will monitor the mobile tracking device during both daytime and nighttime hours for a period of 45 days following the installation of the device. The tracking device may produce signals from inside

private garages or other such locations not open to public view or visual surveillance.

17.   As described above, the SUBJECT VEHICLE is not the first rental car which RIVERA has rented and driven. Should it become obvious that RIVERA is no longer using the SUBJECT VEHICLE because he has returned it to Enterprise, the monitoring of the GPS device will cease and it will be removed from the SUBJECT VEHICLE. It is anticipated that if this happens, a new application for installation of GPS device on RIVERA's new rental will be made to the Court.

18.   Given the contents of this Affidavit and the ongoing nature of the investigation described herein, I respectfully request that the Court order that this affidavit, the application and the warrant be and remain sealed for a period of 45 days after the use of the tracking device has ended or until such time as the Court orders.   In accordance with Title 18, United States Code, Section 3103a (b), and Federal Rule of Criminal Procedure 41(f) (3), I further request that the order granting this application delay notification of the execution of the order for a period not to exceed 45 days after the use of the mobile tracking device has ended because there is reasonable cause to believe that providing immediate notification would seriously jeopardize an ongoing investigation. As demonstrated above, there is probable cause to believe that Blake RIVERA is engaged in continued criminal activity. Were he to learn of the existence of the requested Order or to learn of the installation of the mobile tracking device, it would disclose to him that he is under investigation by law enforcement officers. Based on my training and experience, I believe that this would cause RIVERA to destroy evidence, such as narcotics, drug

ledgers or the proceeds of narcotics transactions, and/or flee the jurisdiction and otherwise seriously jeopardize the ongoing criminal investigation. Notice therefore should be delayed so as to avoid seriously jeopardizing the ongoing criminal investigation involving Blake RIVERA.

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the DEA or their authorized representatives, including but not limited to, Rochester Police Department officers, other law enforcement agents, and technicians assisting in the above-described investigation, to install a GPS mobile tracking device in or on the SUBJECT VEHICLE within the Western District of New York within 10 calendar days of the issuance of the requested warrant, and to remove said mobile tracking device from the SUBJECT VEHICLE after the use and monitoring of the tracking device has ended (or earlier should RIVERA return the SUBJECT VEHICLE to the rental car company; to enter onto private property for the purpose of installing, maintaining, repairing, and/or removing the tracking device; and to monitor the signals from that tracking device, for a period of 45 days following the issuance of the warrant, including signals produced when the SUBJECT VEHICLE is inside private garages and other locations not open to the public view or visual surveillance, and when

the SUBJECT VEHICLE is within or outside the Western District of New York, but within the United States.

Respectfully submitted,

_____
CHRISTOPHER MAHAFFY
DEA Special Agent

Sworn to and subscribed before me on
this the 3rd day of December, 2015.

_____
HONORABLE MARIAN W. PAYSON
United States Magistrate Judge